# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Wisler Marcelus,

     *Plaintiff,*

    v.

Corrections Corporation of America/Correctional
Treatment Facility,

     *Defendant.*

Civil Action No. 1:07-cv-00721(RJL)

## DEFENDANT CORRECTIONS CORPORATION OF
## AMERICA'S MOTION FOR PARTIAL DISMISSAL

Pursuant to Rules 12 (b) (1) and (h)(3) of the Federal Rules of Civil Procedure,

Defendant Corrections Corporation of America ("CCA")[1] hereby respectfully moves that

the Court dismiss Plaintiff's claims of retaliation in Count II and breach of contract in

Count IV of the Complaint in the above-captioned case.[2] As grounds for this Motion,

CCA states that: (1) Plaintiff failed to exhaust his administrative remedies as to a

retaliation claim[3]; and (2) this Court lacks jurisdiction over a breach of contract claim

arising out of a collective bargaining agreement. The grounds for this Motion are more

---

[1] "Corrections Corporation of America/Correctional Treatment Facility" is incorrectly named herein as the defendant. The employer of Wisler Marcelus was "CCA of Tennessee, Inc."

[2] In addition, to the extent that Plaintiff is attempting to bring a harassment and/or hostile work environment cause of action, such claims also must be dismissed.

[3] Plaintiff likewise failed to exhaust his administrative remedies with regard to any harassment and/or hostile work environment claims.

fully set forth in CCA's Memorandum in Support of its Motion For Partial Dismissal

which accompanies this Motion.

Dated: July 18, 2007                     Respectfully submitted,


                                         By: /s/ Alison N. Davis
                                             Alison N. Davis
                                             D.C. Bar No. 429700

                                             FORD & HARRISON LLP
                                             1300 19th Street, N.W., Suite 700
                                             Washington, DC  20036
                                             (202) 719-2000
                                             (202) 719-2077 (Fax)
                                             adavis@fordharrison.com

                                             Attorneys for Defendant Corrections Corporation of
                                             America.


## CERTIFICATE OF SERVICE

The undersigned, Alison N. Davis, hereby certifies that she served a copy of the

foregoing **DEFENDANT CORRECTIONS CORPORATION OF AMERICA'S**

**MOTION FOR PARTIAL DISMISS** to the following counsel of record via electronic

court filing on July 18, 2007:

    Sharon Theodore-Lewis
    D.C. Bar No. 452497
    Richard E. Patrick
    D.C. Bar No. 396571
    PATRICK HENRY LLP
    5900 Princess Garden Parkway, Suite 640
    Lanham, Maryland 20706
    (240) 296 – 3488 – phone
    (240) 296 – 3487 – fax


Alison N. Davis

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Wisler Marcelus,

     *Plaintiff,*

     v.

Corrections Corporation of America/Correctional
Treatment Facility,

     *Defendant.*

Civil Action No. 1:07-cv-00721 (RJL)

**DEFENDANT CORRECTIONS CORPORATION OF
AMERICA'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR PARTIAL DISMISSAL**

Pursuant to Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure,

Defendant Corrections Corporation of America ("CCA")[1] states as follows in support of

its motion for partial dismissal:

**I.    FACTUAL STATEMENT**

Prior to bringing this action, on November 30, 2004, Plaintiff Wisler

Marcelus ("Plaintiff") dual filed a Charge of Discrimination ("Charge") with the U.S.

Equal Employment Opportunity Commission ("EEOC") and D.C. Office of Human

Rights ("DCOHR") in which Plaintiff alleged that CCA discriminated against him on the

basis of his race, national origin, and age in violation of the D.C. Human Rights Act of

1977, as amended, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),

and the Age Discrimination In Employment Act of 1967, as amended by discharging him

in September of 2004. Exhibit A, Charge of Discrimination; *see also*, Document No. 1,

---

[1] "Corrections Corporation of America/Correctional Treatment Facility" is incorrectly named herein as the
defendant. The employer of Wisler Marcelus was "CCA of Tennessee, Inc."

Complaint at ¶ 7. (stating "Plaintiff filed a timely claim with the District of Columbia

Office of Human Rights."). Consistent with Plaintiff's narrative, only two bases of

discrimination were checked on the Charge – national origin and age. Neither the box for

"Retaliation" nor "Other" was selected as a substantive basis on the Charge. Finally,

there is no implicit or explicit suggestion in the Charge that Plaintiff also was

complaining about retaliation, harassment, or the existence of a hostile work

environment. *Id.* The narrative section of Plaintiff's Charge of Discrimination, in its

entirety, states the following:

> I believe that I have been discriminated against on the bases [sic] of my national origin (Haiti) and age (56 years), and in the terms, conditions, privileges and involuntary discharge of my employment because:
>
> Respondent hired me as a Correctional Officer on May 28, 2002, and I have consistently performed by duties in a satisfactory manner.
>
> On September 3, 2004, I reported for duty at 6:00 a.m and almost immediately began my duties of conducting out of cell time for the inmates in SMU-A. I placed restraints on an inmate and escorted him out of his cell for recreation. As I was doing this, another inmate exited his cell, which apparently had not been properly secured, and the inmate that I was escorting assaulted the one who exited the cell. We had been having problems securing that particular cell, but the Respondent alleges that maintenance personnel had repaired the cell on September 2, 2004, and that it was functioning properly. Respondent terminated me on September 30, 2004 saying that I bore "some responsibility in checking to ensure the safety of the inmates, yourself and other employees while on duty." As I said earlier, I came on duty at 6:00 a.m. and immediately started out of cell activities for the inmates, all cells should have been secured by the previous shift.
>
> It is my understanding that the inmate who was the victim in the assault had decided to litigate, Respondent terminated me as a scapegoat so that it could defend itself in a lawsuit by blaming me for what happened. Other employees who are younger than me and not of my national origin, have had similar instances when one inmate assaults another. These other employees were suspended for a period of time, but they were not terminated.

Therefore, I charge Respondent with an unlawful discriminatory practice on the bases [sic] of my national origin and age in violation of the D.C. Human Rights Act of 1977, as amended, Title VII of the Civil Rights Act of 1964, as amended, and the Aged Discrimination in Employment Act of 1967, as amended. I have not commenced any action, civil, criminal or administrative, based on the above allegations, other than the following: CROSS FILED WITH THE EEOC.

Exhibit A.

More than two (2) years later, on or about April 20, 2007, Plaintiff brought this action against CCA. In his Complaint, Plaintiff states that this action is brought against CCA:

for committing violations of Title VII of [t] he Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* providing for relief against discrimination based on national origin, harassment, hostile work environment and retaliation, and for violations of the Age Discrimination in Employment Act of 1967 (ADEA).

With regard to the specific claims for relief, Plaintiff states the following four (4) grounds:

1.     Discrimination in violation of 42 U.S.C. §2000e et seq. (Count I);

2.     Retaliation in violation of 42 U.S.C. §2000e-3(a)(Count II);

3.     Discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA")(Count III); and

4.     Breach of Contract (Count IV).

Document No. 1, Complaint at ¶¶ 41 – 45. Further, Plaintiff alludes to the fact that he believes that he was harassed and/or forced to work in a hostile work environment. *Id.* at ¶¶ 1, 10-13. Plaintiff, however, does not explicitly set forth a claim for relief based upon his factual assertions that CCA allegedly harassed him and created a hostile work environment as a separate Count. Therefore, it is unclear to Defendant whether Plaintiff also is asserting a harassment or hostile work environment claim.

With regard to Plaintiff's breach of contract claim, it is based on CCA's alleged failure to follow the termination procedures outlined in the collective bargaining agreement ("CBA") between CCA and the National Professional Corrections Employees Union ("NPCEU"). *Id.* at ¶¶ 44 – 45. The CBA includes a discipline process. *See* Declaration of Sheri Saluga ("Saluga Decl."), Exhibit A (CBA between CCA and NPCEU, Art. 11). Under the discipline provisions, CCA cannot effectuate a termination until it has conducted an investigation, including at least three (3) days advance written notice of the issues to the employee and an opportunity for the employee to meet with the Assistant Warden or her designee. *Id.* (Section 9, Investigatory Interview).

An employee who disagrees with discipline, such as discharge, imposed pursuant to Article 11 can file a grievance. *Id.* (Art. 10). Specifically, the CBA provides an initial three (3) step process for the resolution of disputes between employees and CCA regarding discipline. *Id.* (Section 3). If the employee wishes to challenge his termination beyond the three-step process, he can request arbitration. Specifically, the CBA states:

A.    The parties agree that arbitration is the method of resolving grievances which have not been satisfactorily resolved pursuant to the Grievance Procedure. it is further agreed that the American Arbitration Association will be used to adjudicate arbitrated matters, unless the parties mutually agree to an alternative form of dispute resolution.

\* \* \*

C.    All decisions of an arbitrator shall be final and binding on both the Employer and the Union. All decisions of the arbitrator shall be limited to the interpretation and/or application of the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. The Union and the Employer agree that all costs, fees, and expenses of arbitration shall be shared equally by the parties.

*Id.* (Section 4:Arbitration).

Plaintiff erroneously contends that CCA failed to follow the terms of the CBA regarding termination of an employee, and thus breach the CBA. Document No. 1, Complaint at ¶ 44. He further contends that he was not provided with the minimum three (3) days of advance notice before he was terminated. *Id.* at ¶ 45. There is no allegation that Plaintiff utilized either the CBA's grievance procedure or the arbitration process to dispute whether CCA terminated him in accordance with the CBA.

## II.     ARGUMENTS

### A.     This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Retaliation Claim Under Title VII  (Count II) Because Plaintiff Failed to File a Timely Charge of Discrimination with the EEOC.[2]

Plaintiff failed to exhaust his administrative remedies by filing a timely charge of discrimination based on retaliation. Before filing a suit under Title VII, a plaintiff must exhaust his administrative remedies by filing a Charge with the EEOC or a state fair employment agency. *Wiley v. Johnson*, 436 F. Supp. 3d 91, 95 (D.D.C. 2006). A plaintiff's Charge defines the scope of the subsequent right to sue in federal court. *Park v. Howard Univ.*, 71 F.3d 904, 908 (D.C. Cir. 1995) (dismissing claim that was not specifically mentioned or supported by factual allegations in the Charge of Discrimination). Where a plaintiff's subsequent action complains of a type of discrimination never mentioned in the Charge, jurisdiction over the claim does not exist. *Mianegaz v. Hyatt Corp*, 319 F. Supp. 2d 13, 17 (D.D.C. 2004) (dismissing the plaintiff's termination claim because his Charge of Discrimination made no mention of termination). Furthermore, not even "a vague or circumscribed EEOC charge will . . .

---

[2] Likewise, as set forth more fully below, the Court would not have jurisdiction over a claim of harassment or hostile work environment under Title VII.

satisfy the exhaustion requirement for claims it does not fairly embrace." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (granting summary judgment for employer because plaintiff failed to make any mention of a wrongful termination claim in her Charge of Discrimination).

Plaintiff's Complaint is not limited to asserting a claim that CCA discriminated against him in September of 2004 by terminating his employment. Rather, Plaintiff also contends that CCA retaliated against him. Document No. 1, Complaint at ¶ 42. Nowhere, however, in his Charge did Plaintiff allege retaliation. Plaintiff's Charge of Discrimination only mentions his discharge. Given the factual statements set forth in Plaintiff's Charge, Plaintiff failed to exhaust his administrative remedies in regard to his retaliation claim.

Plaintiff's Charge lacks not only the phrase "retaliation," but also any factual allegations which arguably would support such claim. *Park*, 71 F.3d at 908 (dismissing hostile work environment claim that was not specifically mentioned or supported by factual allegation in the Charge of Discrimination). The all encompassing assertion that "I believe that I have been discriminated against on the basis of my national origin (Haiti) and age (56 years), and in the terms, conditions, privileges and involuntary discharge of my employment" was insufficient to make CCA aware that Plaintiff was complaining about retaliatory conduct. *Id.* (stating that ""the goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship."") (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). Moreover, Plaintiff had the opportunity to

check the box of the type of discrimination that applied. Exhibit A. He only checked the "national origin" and "age" boxes. *Id.* He never checked the "retaliation" or "other" boxes. *Id.* The Charge demonstrates that Plaintiff was only lodging a complaint about perceived discriminatory treatment in connection with his termination.

In addition, assuming that Plaintiff is attempting to assert a claim that CCA harassed him and created a hostile work environment, Plaintiff similarly failed to exhaust his administrative remedies. Document No. 1, Complaint at ¶ 1. However, Plaintiff's Complaint does not formally list harassment or hostile work environment in his "statement of counts." *Id.*, Complaint at ¶ 41 – 45. If Plaintiff in fact is attempting to bring harassment and hostile work environment claims, those potential causes of action, just like Plaintiff's formally pled retaliation claim, must be dismissed. Contrary to Plaintiff's assertion that he has exhausted his administrative remedies with regard to his termination and ADEA claims, *Id.*, Complaint at ¶ 7, Plaintiff failed to include any claims of harassment or hostile work environment in his Charge. Exhibit A.

In short, Plaintiff's Charge is silent as to any alleged discriminatory acts by CCA other than the termination. Consequently, Plaintiff's retaliation, and harassment, and hostile work environment claims, if any, must be dismissed with prejudice. *See Park*, 71 F.3d at 908.

**B.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Breach of Contract Claim (Count IV) Because the Collective Bargaining Agreement Provides the Exclusive Avenue for the Resolution of Plaintiff's Dispute with his Employer.**

This Court lacks jurisdiction over Plaintiff's breach of contract claim because CCA and NPCEU have agreed that binding arbitration is the exclusive means of resolving disputes arising under the collective bargaining agreement. The Supreme Court

consistently has held that when employers and unions have established procedures for arbitrating and addressing matters outside the court system, the courts do not have jurisdiction and should not interfere. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960) (stating "when the judiciary undertakes to determine merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal" and finding that the lower court did not have jurisdiction to determine the merits of the claim); *see also, Local 771, Int'l Union UAW v. Ring Screw Works*, 498 U.S. 168, 1972-74 (1990) (stating "that a presumption favoring access to a judicial forum is overcome whenever the [employer and the union] have agreed upon a different method for the adjustment of their disputes.").

Those cases are consistent with the Labor Management Relations Act, 1947 ("LMRA"), which governs the relationship between employers and unions. The LMRA states that "a method agreed upon by the [employer and the union] is declared to be the desirable method for settlement of grievance disputes arising over the application of interpretation of an existing collective bargaining agreement." 29 U.S.C. § 173(d) (2007).

Plaintiff admits that there was a collective bargaining agreement between CCA and his union.. Document No. 1, Complaint at ¶ 44. Accordingly, Plaintiff first should have submitted his complaint as a grievance and then filed for arbitration if he was dissatisfied, as the CBA between CCA and NPCEU has a dispute resolution provision that provides for the exclusive means for resolving disputes between the parties. Further, pursuant to the CBA, the decisions of the neutral arbitrator are to be "final and binding upon both the NPCEU and CCA." Saluga Decl., Exhibit A at Art. 10, Sec. 4. However,

there is no allegation that Plaintiff utilized either the grievance or arbitral procedure under the CBA to challenge his termination. To the contrary, Plaintiff now is attempting to circumvent the CBA and the arbitration process. According to the Supreme Court, this is not allowed. *United Steelworkers of Am.*, 363 U.S. at 564. Therefore, this Court does not have jurisdiction to hear Plaintiff's breach of contract claim.

## III. CONCLUSION

For all of the reasons stated above, CCA respectfully requests that this Court dismiss with prejudice Counts II and IV of Plaintiff's Complaint which asserts claims of retaliation and breach of contract because the Court lacks subject matter jurisdiction. To the extent that Plaintiff is asserting claims of harassment and/or hostile work environment, such claims likewise should be dismissed. CCA further requests that the Court award its attorneys' fees and costs for responding to these claims.


Dated: July 18, 2007                        Respectfully submitted,


                                            By: /s/ Alison N. Davis
                                                Alison N. Davis
                                                D.C. Bar No. 429700

                                                FORD & HARRISON LLP
                                                1300 19th Street, N.W., Suite 700
                                                Washington, DC 20036
                                                (202) 719-2000
                                                (202) 719-2077 (Fax)
                                                adavis@fordharrison.com

                                                Attorneys for Defendant Corrections Corporation of America.

## CERTIFICATE OF SERVICE

The undersigned, Alison N. Davis, hereby certifies that she served a copy of the

foregoing **DEFENDANT CORRECTIONS CORPORATION OF AMERICA'S**

**MEMORANDUM IN SUPPORT ITS MOTION FOR PARTIAL DISMISSAL** to the

following counsel of record via electronic court filing on July 18, 2007:

Sharon Theodore-Lewis
D.C. Bar No. 452497
Richard E. Patrick
D.C. Bar No. 396571
PATRICK HENRY LLP
5900 Princess Garden Parkway, Suite 640
Lanham, Maryland 20706
(240) 296 – 3488 – phone
(240) 296 – 3487 – fax

Alison N. Davis

**A**

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☒ FEPA | |
| | ☐ EEOC | |

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

D.C. Office Of Human Rights _____ and EEOC
*State or local Agency, if any*

NAME *(Indicate Mr. Ms., Mrs.)*

Mr. Marcelus Wisler

| HOME TELEPHONE *(Include Area Code)* |
|---|
| (301) 736-6591 |

STREET ADDRESS              CITY, STATE AND ZIP CODE

1005 Quietview Drive, Capitol Heights, MD 20743

| DATE OF BIRTH |
|---|
| 12/26/194? |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| CCA/CTF | Cat D (501 +) | (202) 547-7822 |

STREET ADDRESS              CITY, STATE AND ZIP CODE

1901 E Street, S.E., Washington, DC 20003

| COUNTY |
|---|
| 001 |

| TELEPHONE NUMBER *(Include Area Code)* |
|---|

STREET ADDRESS              CITY, STATE AND ZIP CODE

| COUNTY |
|---|

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER *(Specify)*

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 09/30/2004 | 09/30/2004 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I believe that I have been discriminated against on the bases of my national origin (Haiti) and age (56 years), and in the terms, conditions, privileges and involuntary discharge of my employment because:

Respondent hired me as a Correctional Officer on May 28, 2002, and I have consistently performed my duties in a satisfactory manner.

On September 3, 2004, I reported for duty at 6:00 a.m. and almost immediately began my duties of conducting out of cell time for the inmates in SMU-A. I placed restraints on an inmate and escorted him out of his cell for recreation. As I was doing this, another inmate exited his cell, which apparently had not been properly secured, and the inmate that I was escorting assaulted the one who exited the cell. We had been having problems securing that particular cell, but the Respondent alleges that maintenance personnel had repaired the cell on September 2, 2004, and that it was functioning properly. Respondent terminated me on September 30, 2004 saying that I bore "some responsibility in checking to ensure the safety of the inmates, your-self and other employees while on duty." As I said earlier, I came on duty at 6:00 a.m. and immediately started out of cell activities for the inmates, all cells should have been secured by the previous shift.

## ## Text is Continued on Attached Sheet(s) ##

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - *(When necessary for State and Local Requirements)* |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| Date          Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)*  11-30-2004 |

EEOC FORM 5 (Rev. 07/99)

RESPONDENT'S COPY

Nov 30 10:01 2004  CP Initials _____  Chg # , Attachment Page 1

----------------------------------------------------------------------

Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
----------------------------------------------------------------------


It is my understanding that the inmate who was the victim in the
assault had decided to litigate, Respondent terminated me as a
scapegoat so that it could defend itself in a lawsuit by blaming me
for what happened. Other employees who are younger than me and not of
my national origin, have had similar instances when one inmate assaults
another.  These other employees were suspended for a period of time,
but they were not terminated.

Therefore, I charge Respondent with an unlawful discriminatory
practice on the bases of my national origin and age in violation of
the D.C. Human Rights Act of 1977, as amended, Title VII of the
Civil Rights Act of 1964, as amended, and the Age Discrimination in
Employment Act of 1967, as amended.  I have not commenced any
action, civil, criminal or administrative, based on the above
allegations, other than the folowing: CROSS FILED WITH THE EEOC.

**B**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Wisler Marcelus,

        *Plaintiff,*

    v.

Corrections Corporation of America/Correctional
Treatment Facility,

        *Defendant.*

Civil Action No. 1:07-cv-00721(RJL)

## DECLARATION OF SHERI SALUGA

Pursuant to 28 U.S.C. § 1746, I, Sheri Saluga, being over eighteen (18) years of age and competent to testify as a witness and having personal knowledge of the facts set forth below, do hereby make oath in due form as follows:

2.      I am employed by CCA of Tennessee, Inc. ("CCA"), incorrectly named as Corrections Corporation of America/Correctional Treatment Facility, in the position of Quality Assurance Management in Washington, D.C.

3.      I have worked for CCA for more than three (3) years.

4.      CCA and the National Professional Corrections Employee's Union ("NPCEU") have entered into a collective bargaining agreement.

5.      The attached Exhibit A is a correct and accurate representation of Articles 10 and 11 of the collective bargaining agreement between CCA and NPCEU in 2004.

I declare under the penalty of perjury that the contents of the foregoing

Declaration are true and correct.

Executed this 18th day of July, 2007.

_____
Sheri Saluga

7 - 18 - 07
Date

DC:67307.1



# AGREEMENT BETWEEN

# CORRECTIONS CORPORATION OF AMERICA

# AT

# CORRECTIONAL TREATMENT FACILITY

# AND THE

# NATIONAL PROFESSIONAL CORRECTIONS EMPLOYEES UNION

# ARTICLE 10

## GRIEVANCE-ARBITRATION PROCEDURE

**Section 1:**  **Definition**
A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to the terms and conditions of this agreement. A grievance shall include the complaint of an employee or of the Union which involves the interpretation, application of or compliance with the provisions of this Agreement.

**Section 2:**  **Categories:**

A.  **Personal:**  A grievance involving an individual employee in the bargaining unit. A personal grievance must initially be filed at Step 1.

B.  **Group:**  A grievance involving a number of employees in any subdivision of the Correctional Treatment Facility. A Group grievance must initially be filed at Step 2 of the grievance procedure.

C.  **Class:**  A grievance involving all the employees in the unit. A Class grievance must initially be filed at Step 2 of the grievance procedure. Grievances so filed will be processed only if the issue raised is common to all employees in the unit.

D.  All grievances must be filed and signed by a Union representative.

**Section 3:**  **Procedure:**

A.  **Step 1:**  The aggrieved employee, with a Union representative, shall orally present and discuss the grievance with the employee's supervisor within ten (10) days of the occurrence of the event giving rise to the grievance or within ten (10) days of the date the employee knew or should have known of such event. The supervisor will make a decision on the grievance and reply to the employee and/or his representative within ten (10) days after oral presentation of the grievance. Under the circumstances described in Article 3, "Employee Rights" at Section 3, time limits for filing grievances will be extended for thirty (30) days.

B.  **Step 2:**  If the grievance is not settled, the employee, with his Union representative, shall submit a signed, written grievance to the Warden or his/her designee within fifteen (15) days following the supervisor's oral response or, if it is a Group or Class grievance, fifteen (15) days from the occurrence of the event giving rise to the grievance or fifteen (15) days from the date the Union knew or should have known of such event.

16

The grievance shall contain the following elements:

1. A statement of the specific provision(s) of the Agreement alleged to be violated;

2. The date(s) on which the alleged violation occurred, if known;

3. A brief description of how the alleged violation occurred;

4. The specific remedy or adjustment sought; and

5. The signature of the Union representative.

The Warden or his designee shall respond to the Union, in writing, within fifteen (15) days of receipt of the grievance at Step 2.

C. **Step 3**: If the grievance remains unsettled, the Union may submit the grievance to the Senior Division Director within fifteen (15) days following the receipt of the Warden's response. The Senior Division Director must respond in writing within fifteen (15) days of receipt.

D. **Step 4**: If the grievance remains unsettled, the Union may submit the controversy to arbitration under the rules of the American Arbitration Association ("AAA"). The Union, within fifteen (15) days after receipt of the Senior Division Director's response, shall notify the Senior Division Director, in writing, if the Union intends to submit the grievance to arbitration. The Union must submit the grievance to arbitration by notifying AAA within thirty (30) days after notification to the Senior Division Director.

E. For purposes of this Article, "days" shall mean calendar days.

**Section 4:** **Arbitration**

A. The parties agree that arbitration is the method of resolving grievances which have not been satisfactorily resolved pursuant to the Grievance Procedure. It is further agreed that the American Arbitration Association will be used to adjudicate arbitrated matters, unless the parties mutually agree to an alternative form of dispute resolution.

B. Employees whose attendance is required at an arbitration hearing shall be on paid time if during working hours when appearing at the arbitration. If the employee is scheduled to work a shift not inclusive of the arbitration hearing, CCA will adjust that employee's schedule to allow a change in shift to include the time of the

17

arbitration, so long as the Union provides at least three (3) days notice to the Employer of the need for the employee's presence absent unusual circumstances.

C.    All decisions of an arbitrator shall be final and binding on both the Employer and the Union. All decisions of the arbitrator shall be limited to the interpretation and/or application of the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. The Union and the Employer agree that all costs, fees, and expenses of arbitration shall be shared equally by the parties.

**Section 5:**    **General**

The parties may extend or waive the time limits contained in this Article by mutual written agreement.

# ARTICLE 11

## DISCIPLINE PROCEDURE

**Section 1:**    **Principles**

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. At the same time the parties recognize the special security concerns of the prison environment. No employee may be disciplined or discharged except for just cause. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement. Discipline shall be progressive in nature. However, any discipline imposed shall be commensurate with the nature, severity and/or the number of offenses committed. The parties agree to adhere to the following procedure.

**Section 2:**    **Discussion**

For all minor, non-repeated offenses committed by an employee, the Employer shall discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the employee's supervisor. Such discussions are not considered discipline and are not grievable. Following such discussion, there is no prohibition against the supervisor and/or employee maintaining a separate record of the date and subject matter of such discussion for their own personal record(s). However, no notation or other information pertaining to such discussions shall be included in the employee's personnel file. While such discussions may not be cited as an element of prior adverse action in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that an employee has been made aware of their obligations and responsibilities.

**Section 3:**    **Letter of Warning**

An employee may be issued a letter of warning. A letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of the deficiency or misconduct to be corrected.

**Section 4:**    **Suspension of Fourteen Days or Less**

An employee may be placed on suspension of fourteen (14) days or less.

**Section 5:**    **Suspension of More Than Fourteen Days or Discharge**

An employee may be suspended for more than fourteen (14) days or discharged.

19

**Section 6:**     **Review of Discipline**

A supervisor may recommend suspension or discharge, but only the Warden or his designee shall have the authority to impose this level of discipline.

**Section 7:**     **Employee Discipline Record**

The record of a disciplinary action against an employee shall not be considered in any subsequent disciplinary action after six (6) months for letters of warning and after eighteen (18) months for suspensions.

**Section 8:**     **Limitation on Discipline**

If the Employer seeks to discipline an employee, it must do so no later than thirty (30) calendar days after the Employer knew or should have known of the act or occurrence giving rise to the proposed discipline.

**Section 9:**     **Investigatory Interview**

The Employer will not effectuate a letter of warning, suspension or discharge until it has conducted an investigation, including advance written notice of the charges and an opportunity for an interview with the Assistant Warden or his/her designee. The interview shall take place no sooner than three (3) days after the notice is issued. The Union shall be provided with the notice and invited to the interview. Prior to the interview, the employee shall remain on the job or shall be on paid administrative leave, at the option of the Employer.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Wisler Marcelus,

      *Plaintiff,*

    v.                                                                Civil Action No. 1:07-cv-00721(RJL)

Corrections Corporation of America/Correctional
Treatment Facility,

      *Defendant.*

## ORDER

    Upon consideration of the Motion for Partial Dismissal of Counts II and IV of the

Complaint, and the entire record herein, it is this _____ day of _____,

2007, hereby

    **ORDERED** that the Motion for Partial Dismissal is **GRANTED**.

    **ORDERED THAT** Plaintiff's claims of retaliation (Count II) and breach of

contract (Count IV) are hereby dismissed with prejudice.

    **FURTHER**, to the extent that Plaintiff is attempting to bring a harassment and/or

hostile work environment cause of action, these claims are hereby dismissed with

prejudice.

 

                        _____

                        United States District Court Judge