UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
MAR 3 1 2008
NANCY MAYER WHITTINGTON, CLERK
U.S DISTRICT COURT

| | |
|---|---|
| WISLER MARCELUS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 07-0721 (RJL) ) |
| CORRECTIONS CORPORATION OF AMERICA/CORRECTIONAL TREATEMENT FACILITY, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(March 31, 2008) [#7]

Plaintiff, Wisler Marcelus ("plaintiff" or "Marcelus"), brought this lawsuit against his former employer, Correctional Corporation of America/Correctional Treatment Facility[1] ("defendant" or "CCA"), alleging claims for discrimination, retaliation and breach of contract in connection with his termination by the defendant as a correctional officer at the DC Jail. Before the Court is defendant's motion to dismiss plaintiff's claims for retaliation and breach of contract. After consideration of the parties' pleadings, the relevant law and the entire record herein, the Court GRANTS defendant's motion.

## BACKGROUND

On September 3, 2004, Marcelus was escorting an inmate out of the cell block when another inmate escaped from his cell and attacked the inmate Marcelus was escorting.

---

[1] Plaintiff named "Corrections Corporation of America/Correctional Treatment Facility" as the defendant in his Complaint. In its motion for partial dismissal, defendant notes that plaintiff's employer was "CCA of Tennessee, Inc." (Def. Mot. n.1.) Plaintiff requested leave to amend his Complaint to name the correct party. (Pl. Opp'n 4.) Seeing no objection from defendant, the Court GRANTS plaintiff leave to file an amended complaint naming the proper defendant.

(Compl. ¶¶ 19-20.) Marcelus had allegedly notified the shift supervisor earlier that day that the cell from which the inmate escaped was unlocked and completed an incident report detailing the assault. (*Id.* ¶¶ 18, 21-22.)

On September 30, 2004, Marcelus met with CTF/CCA Warden Figuerora (the "Warden"), who accused plaintiff of filing a false report and failing to ensure the safety of the inmate he was escorting. (*Id.* ¶ 24.) The Warden told Marcelus that he was fired and asked him to leave the premises. (*Id.* ¶ 23.) Thereafter, CCA sent Marcelus a letter dated October 12, 2004, informing him that his termination was effective October 11, 2004.[2] (*Id.* ¶ 26.) Marcelus alleges, however, that CCA did not follow certain pre-termination procedures required by the collective bargaining agreement (the "CBA") between CCA and the National Professional Corrections Employees Union ("NPCEU"). In particular, he alleges that it failed to provide him with a minimum of three days *advance* written notice of the issues and an opportunity to meet with the Assistant Warden or his designee. (Compl. ¶¶ 45, 32-33; Def. Mot., Ex. B, Art. 11.) As a result, Marcelus filed a grievance after receiving the letter, which CCA rejected as untimely. (*Id.* ¶¶ 29-30.)

In response, Marcelus filed an Equal Employment Opportunity Commission charge ("EEOC Charge" or "the Charge") on November 30, 2004, claiming "age" and "national origin" discrimination. (CCA Mem., Ex. A.) In his textual description, he explained that he believed his termination was nothing more than a "cover" to provide a defense for the prison officials for any future victim-inmate's litigation. Marcelus further claimed that younger

---

[2] In its Answer, CCA states that "the letter incorrectly stated that Plaintiff's termination was effective as of October 11, 2004; Plaintiff's termination was effective as of September 30, 2004." (Answer ¶ 26.) Because deciding a motion to dismiss requires the Court to assume alleged facts to be true, it will assume that plaintiff's termination was effective October 11, 2004.

2

employees, of other national origins, had been suspended, not terminated, in similar circumstances. (*Id.*) After the EEOC issued a right to sue letter, Marcelus initiated this lawsuit. CCA filed its Answer and has moved to dismiss plaintiff's claims for retaliation and breach of contract.[3]

## DISCUSSION

**I.  Legal Standard**

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, due to plaintiff's failure to exhaust. Since motions to dismiss for exhaustion, however, are more appropriately addressed as motions to dismiss for failure to state a claim under Rule 12(b)(6),[4] the Court will treat defendant's motion accordingly. *See Alfred v. Scribner Hall & Thompson, LLP*, 473 F. Supp. 2d 6, 8 (D.D.C. 2007) (Leon, J.) (dismissing Title VII claim pursuant to Rule 12(b)(6) for failure to exhaust); *Potts v. Howard Univ.*, 240 F.R.D. 14, 18-19 (D.D.C. 2007) (applying Rule 12(b)(6) to motion to dismiss for failure to exhaust grievance procedures), *rev'd on other*

---

[3] Although defendant moved to dismiss any allegations of harassment and hostile work environment (CCA Mem. 7), plaintiff's opposition filing did not indicate he is pursuing those claims. As such, the Court need not address them.

[4] Courts traditionally addressed failures to exhaust as questions of subject matter jurisdiction, but recent Supreme Court and D.C. Circuit decisions have suggested a different approach. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511, 515-16 (2006); *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) ("In order to mandate exhaustion, a statute must contain sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." (citations and internal quotations omitted)). Since then, courts in this district continue to grapple with the appropriate standard for failure to exhaust. *Compare Wiley v. Johnson*, 436 F. Supp. 2d 91, 94-95 (D.D.C. 2006) (failure to exhaust administrative remedies in EEOC claim is jurisdictional), *with Camp v. District of Columbia*, No. 04-0234, 2006 WL 667956, *6 & n.4 (D.D.C. Mar. 14, 2006) (EEOC exhaustion is not jurisdictional). Recently, however, the D.C. Circuit affirmed the dismissal of a claim for failure to state a claim where the plaintiff did not timely file his claims after the EEOC dismissed his complaint. *See Ikossi v. Dep't of Navy*, 2008 WL 540234, *7, 9 (D.C. Cir. Feb. 29, 2008).

*grounds*, 2007 WL 4561147 (D.C. Cir. Dec. 7, 2007). The outcome in this case, nonetheless, is the same under either standard.[5]

Rule 12(b)(6) permits courts to dismiss claims if it appears that a plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Of course, the court must assume the alleged facts to be true and draw all inferences in plaintiff's favor. *See id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65 (citations and internal quotation marks omitted). Thus, the Court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276.

---

[5] Although resolution of a Rule 12(b)(1) motion requires "closer scrutiny" than resolution of a Rule 12(b)(6) motion, *see Carter v. Wash. Post*, No. 05-1712, 2006 WL 1371677, *3 (D.D.C. May 15, 2006), since plaintiff's claims cannot survive Rule 12(b)(6) scrutiny, they would not withstand jurisdictional scrutiny. Furthermore, in this instance, the Court can consider the same materials under either standard. Unlike with a motion to dismiss for lack of jurisdiction, courts cannot consider "matters outside the pleadings" when deciding a motion for failure to state a claim without converting it into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Courts, however, may consider documents attached to or incorporated by the complaint in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 n.3 (D.C. Cir. 1997). Here, although plaintiff did not attach his EEOC Charge to his complaint, he referenced it in paragraph 7 of the complaint. *See Carter*, 2006 WL 1371677 at *3 n.4 (treating EEOC charge as incorporated in the complaint because referenced therein). He also referenced the collective bargaining agreement in paragraphs 28-30 and 44. Therefore, the Court deems the EEOC Charge and CBA as incorporated into plaintiff's complaint, and will consider them without converting defendant's motion into one for summary judgment.

**II.     Analysis**

   A.     *Retaliation*

Title VII requires a plaintiff to file an administrative charge with the EEOC prior to filing suit in federal court. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). The theories of discrimination in plaintiff's lawsuit are limited to the theories contained in the EEOC Charge he filed. Any other theories are barred unless the claim is "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (citation and internal quotations omitted).

Here, plaintiff claims he was terminated, in part, due to "retaliation" for "complain[ing] about discrimination and fil[ing] incident reports against co-workers and supervisors." (*See* Compl. ¶ 42.) The only theories mentioned in his EEOC Charge, however, were age and national origin. Indeed, nothing in the EEOC Charge even referenced him making past complaints about discrimination, or filing prior incident reports against co-workers and supervisors. Absent an indication of this theory, plaintiff's retaliation claim here is not "like or reasonably related to" the allegations in his EEOC Charge. *See, e.g., Robinson-Reeder v. Am. Council on Educ.*, No. 07-0880, 2008 WL 224278, *4-5 (D.D.C. Jan. 29, 2008) (failure to exhaust claim where plaintiff neither checked box for nor described conduct constituting retaliation).

Marcelus seeks to excuse this failure to exhaust on the grounds that at an unspecified point in time, an EEOC investigator told Marcelus that his claims of retaliation were included in his EEOC Charge. (Pl. Opp'n 2.) However, because a plaintiff has an

5

opportunity to review his charge prior to signing it, courts are reluctant to excuse exhaustion on the grounds that the EEOC investigator failed to include certain information in the charge. *See Novitsky v. Am. Consulting Engineers, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999) (noting that employee has obligation to review charge drafted by EEOC, and request addition of missing material, prior to signing); *cf. Park*, 71 F.3d at 908-09 (holding allegations contained in unsworn, pre-complaint questionnaire prior to filing charge cannot remedy subsequent omission from EEOC charge). Thus, to the extent Marcelus provided this information to the investigator *prior to* signing his charge, he cannot claim the benefit of this omission. Furthermore, Marcelus has failed to offer any reason for not seeking to amend his charge at a later time. *See Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (holding plaintiff failed to exhaust where she failed to amend original charge or otherwise notify the EEOC of her claim). For all these reasons, plaintiff's claim for retaliation in Count II cannot survive defendant's motion to dismiss and must be dismissed.

B.   *Breach of Contract*

As to plaintiff's breach of contract claim, an employee must similarly exhaust any grievance and arbitration procedures provided for by the collective bargaining agreement prior to bringing suit for breach of contract. *See Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 428, 434 (D.C. Cir. 1994) (recognizing "well-established principle of labor law that disputes subject to mandatory arbitration under a collective bargaining agreement may not be brought to court in lieu of contractual arbitration procedures"). Courts will, however, excuse an employee's failure to exhaust where the employer has

repudiated the grievance procedures, the union has wrongfully refused to pursue the grievance, or it would be futile for the employee to pursue an administrative remedy. *See Potts v. Howard Univ.*, 240 F.R.D. 14, 19 (D.D.C. 2007), *rev'd on other grounds*, 2007 WL 4561147 (D.C. Cir. Dec. 7, 2007); *cf. Univ. of D.C. Faculty Ass'n/NEA v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 163 F.3d 616, 624 (D.C. Cir. 1998). None of these occurred here.

Indeed, Marcelus does not dispute that the CBA contains a grievance and arbitration procedure or that arbitration is the "method of resolving grievances." (Compl. ¶ 28 ("CCA/CTF has an Employee Grievance Procedure in place which allows employees to file a grievance against any management action.").) While he filed a grievance which CCA rejected as untimely, he does not even allege that he pursued the grievance to a final determination. Even if he had, however, a failure to pursue a grievance to final determination does not constitute exhaustion. *See Summers v. Howard Univ.*, 127 F. Supp. 2d 27, 30 (D.D.C. 2000) (finding plaintiff did not avail himself of grievance procedures where authorized to proceed to the next step but did not do so).

Moreover, Marcelus has not alleged that his pursuit of the grievance was thwarted by CCA or his union, or was otherwise futile. *Cf. UDC Chairs Chapter v. Bd. of Trustees of the Univ. of the District of Columbia*, 56 F.3d 1469, 1475 (D.C. Cir. 1995) (finding exhaustion futile requires "certainty of an adverse decision or indications that pursuit of administrative remedies would be clearly useless" (internal quotations and citations omitted)). To the contrary, Marcelus argues in his opposition brief that his failure to exhaust should be "excused" because he was unaware that he had further recourse. (*See* Pl.

7

Opp'n 2, 3-4.) The Court disagrees. Employees have a duty to know the grievance procedures provided for in the requisite collective bargaining agreement. *See Miller v. General Motors Corp.*, 675 F.2d 146, 150 (7th Cir. 1982) (declining to excuse failure to exhaust despite claims of lack of knowledge of grievance procedures where plaintiff had access to materials explaining rights and made no allegation that he could not obtain those materials); *Nicolaisen v. Chicago & Northwestern Transp. Co.*, No. 89-2430, 1991 WL 237619, *11 (D. Kan. Oct. 30, 1991) (finding that ignorance of contractual rights did not excuse failure to exhaust because employee has duty to know grievance procedures). While Marcelus claims that CCA never provided him with an employee handbook or copy of the CBA (Pl. Opp'n 1, 3), he does not allege that he was unable to obtain a copy or otherwise learn his rights thereunder. *Cf. Miller*, 675 F.2d at 150 (finding that court might excuse failure to exhaust if employee not provided with and could not access information about grievance procedures). Accordingly, plaintiff has failed to allege facts sufficient to excuse his failure to exhaust his remedies under the collective bargaining agreement. As such, his claim for breach of contract in Count IV must also be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS CCA's partial motion to dismiss plaintiff's retaliation and breach of contract claims. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge